UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-60178-CIV-COHN
MAGISTRATE JUDGE P. A. WHITE

EARL HUGHES BURGESS, ET AL.,  :

    Plaintiff,  :

v.  :  REPORT OF
                                      MAGISTRATE JUDGE
UNITED STATES, ET AL.,  :

    Defendants.  :
_____

I. Introduction

On February 27, 2006, Earl Hughes Burgess, currently incarcerated at the FCI in Jesup, Georgia, filed a pro se civil rights complaint pursuant to 42 U.S.C. §1983 concerning events that occurred while he was detained at the Broward County Jail ("BCJ") from December 13, 2005 to February, 2006. [DE# 1]. The plaintiff's wife was named as a co-plaintiff, but only the plaintiff verified the complaint. As such, the action was considered an individual action. The plaintiff is proceeding in forma pauperis. [DE# 7].

The plaintiff alleged that BCJ Deputy Brenda West violated his right to privacy by disclosing that he had AIDS to other inmates, and raised allegations about violations of the grievance procedure. [DE# 1]. On April 20, 2006, the Undersigned issued a Report recommending that the case proceed only against Deputy West. [DE# 8]. The Honorable James I. Cohn adopted the recommendations of the Report on May 11, 2006. [DE# 14]. This Court mailed a notice of lawsuit and request for waiver of service to West on May 19, 2006, and same has not been returned to the Court.

The plaintiff has filed an Amended Complaint [DE# 21] and a Motion to Add His Wife as a Co-Plaintiff [DE# 22].

The Amended Complaint is before the Court for an initial screening pursuant to 28 U.S.C. §1915.

## II. Analysis

A. Applicable Law for Screening

As amended, 28 U.S.C. §1915 reads in pertinent part as follows:

> Sec. 1915 Proceedings in Forma Pauperis
>
> * * *
>
> (e)(2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that –
>
> * * *
>
> (B) the action or appeal –
>
> * * *
>
> (i) is frivolous or malicious;
>
> (ii) fails to state a claim on which relief may be granted; or
>
> (iii) seeks monetary relief from a defendant who is immune from such relief.

The standard for determining whether a complaint states a claim upon which relief may be granted is the same whether under 28 U.S.C. §1915(e)(2)(B) or Fed.R.Civ.P. 12(b)(6) or (c). See Mitchell v. Farcass, 112 F.3d 1483, 1490 (11 Cir. 1997)("The language of section 1915(e)(2)(B)(ii) tracks the language of Federal Rule of Civil Procedure 12(b)(6)"). When reviewing complaints pursuant to 28 U.S.C. §1915(e)(2)(B), the Court must apply the standard

2

of review set forth in Fed.R.Civ.P. 12(b)(6), and the Court must accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom. In order to state a claim, a plaintiff must show that conduct under color of state law, complained of in the civil rights suit, violated the plaintiff's rights, privileges, or immunities under the Constitution or laws of the United States. Whitehorn v. Harrelson, 758 F.2d 1416, 1419 (11 Cir. 1985). Pro se complaints are held to "less stringent standards than formal pleadings drafted by lawyers and can only be dismissed for failure to state a claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Estelle v. Gamble, 429 U.S. 97, 106 (1976) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The Eleventh Circuit recently confirmed that there is a heightened pleading standard in §1983 actions against entities that can raise qualified immunity as a defense.   Swann v. Southern Health Partners, Inc., 388 F.3d 834, 837 (11 Cir. 2004). While   Fed.R.Civ.P. 8 allows a plaintiff considerable leeway in framing a complaint, the Eleventh Circuit has tightened the application of Rule 8 with respect to §1983 cases in an effort to weed out nonmeritorious claims, requiring that a §1983 plaintiff allege with some specificity the facts which make out its claim. GJR Investments, Inc. v. County of Escambia, Fla., 132 F.3d 1359, 1367 (11 Cir. 1998); Oladeinde v. City of Birmingham, 963 F.2d 1481, 1485 (11 Cir. 1992), cert. denied sub nom. Deutcsh v. Oladeinde, 507 U.S. 987 (1993).  Nevertheless, the threshold is "exceedingly low" for a complaint to survive a motion to dismiss for failure to state a claim.   Ancata v. Prison Health Servs., Inc., 769 F.2d 700, 703 (11 Cir. 1985).

B. Factual Allegations

In the Amended Complaint [DE# 21], the plaintiff names the following defendants:

1. BCJ Deputy Brenda West
2. BCJ Deputy Carson
3. BCJ Nurse Denmeade
4. BCJ Nurse Jane Doe

5. BCJ Sergeant Scott

6. BCJ Lt. Palmer

7. BCJ Sergeant Owens

8. BCJ Lt. Smith

9. BCJ Captain Neilly

10. BCJ Sergeant Lam

11. BCJ Barbara Evans

12. Broward County Sheriff Jenne

13. United States (Federal Government)

14. Unknown deputies over the grievance procedure

The plaintiff alleges that the defendants conspired to violate his right to privacy and conspired to libel, defame, embarrass and injure his and his wife's reputation. He further alleges that the defendants failed to comply with the administrative requirements of the grievance procedure. The plaintiff raises the following specific allegations:

1. On December 13, 2005 inmate Eric Bevins (not a defendant) told the plaintiff, in front of West, that West told inmates in Cells 6-A-1 and 6-A-2 that the plaintiff had AIDS and was dying.

2. Upon request, West gave the plaintiff an inmate request form.

3. The plaintiff filled out the form and gave it to Carson, who told the plaintiff he had used the wrong form, and gave him a grievance form.

4. The plaintiff filled out the grievance form and gave it to Carson, but Carson never submitted it.

5.  On one occasion prior to December 13, 2005, West accompanied Denmeade when medicine was being distributed, and Denmeade gave the plaintiff his medication in plain view of West, disclosing that he had AIDS. West commented that his pills were big. The plaintiff states that West is assigned to accompany Denmeade for security purposes.

6.  On December 19, 2005, Scott, West's supervisor, came to the plaintiff's cell to investigate his complaints (the plaintiff apparently filed a second grievance against West and Denmeade that was processed), and told him to drop his complaint against Denmeade.

7.  The plaintiff then filed a grievance against Scott, who ceased his investigation.

8.  On December 20, 2005, Palmer came to the plaintiff's cell to investigate the grievance he gave to Carson on December 13, 2005 against West. (The plaintiff had surmised earlier, incorrectly, that Carson did not submit this grievance). Palmer told the plaintiff that she was "over" the Complaint Bureau and that she had spoken with the plaintiff's wife, and the two of them decided to "pursue legal actions." This was the only communication the plaintiff or his wife had with Palmer.

9.  On December 25, 2005, the plaintiff wrote another grievance, and Owens balled it up and returned it to the plaintiff.

10. On December 26, 2005, Owens intercepted a grievance he intended to submit to Owens' supervisor complaining about Owens' misconduct in connection with the grievance procedure.

11. Grievance the plaintiff submitted on January 2, 2006 and January 6, 2006 were denied and returned to the plaintiff on January 30, 2006, beyond the ten day time limit for responding to grievances.

12. On December 25, 2006 the plaintiff submitted a grievance about West's use of inmates to pass out commissary items, and she denied that one of the inmates was on her floor.

13. On January 9, 2006 Smith came to the plaintiff's cell to investigate after talking to the plaintiff's wife. The plaintiff gave him a grievance, and Smith never responded to it.

14. On December 28, 2005 the plaintiff told Lam that West had moved inmate Bevins to another part of the jail in retaliation for telling the plaintiff that West had told him the plaintiff had AIDS. Lam promised, but failed, to investigate.

15. Denmeade is conspiring "to intrude on Plaintiff's and Plaintiff's wife right to privacy and attempting to cover up her malicious and wrongful acts against Plaintiff and his wife."

16. The plaintiff's wife has called the jail several times to complain, and has been misled and has not resolved the matter. Evans promised, but failed, to investigate and call the plaintiff's wife.

17. The plaintiff's wife spoke with Captain Neilly and his secretary one time, but has subsequently been unable to reach them.

18. The plaintiff alleges that Sheriff Jenne is liable for the constitutional violations of his subordinates and he and Evans have failed to properly train their subordinates about AIDS.

19. Nurse Jane Doe told the plaintiff he wasn't guaranteed to win this lawsuit, told him to drop it, and asked him if his wife had AIDS.

20. The plaintiff wrote at least four grievances that were ignored.

21. The plaintiff alleges that the United States is liable because as a federal prisoner he has been defamed, libeled, slandered and deprived of his right to privacy.

C.   Motion to Amend [DE# 20]

A party may amend the original pleading once as a matter of course at any time before a responsive pleading is served. Fed. R. Civ. P. 15(a). No responsive pleading has been filed in this case, and the plaintiff's Motion for Leave to File an Amended Complaint [DE# 20] should be granted. This Amended Complaint, however, is subject to an initial screening pursuant to 28 U.S.C. §1915.

D.   Analysis of Sufficiency of Amended Complaint

1.   Allegations of Conspiracy

The plaintiff alleges generally that the defendants conspired to violate his constitutional rights. The plaintiff has failed to raise a cognizable constitutional conspiracy claim against any defendant. His allegation that the defendants conspired to violate his civil rights fails to state a claim for relief. The Supreme Court has recognized that a conspiracy to violate constitutional rights states a claim under 42 U.S.C. §1983. Dennis v. Sparks, 449 U.S. 24, 29 (1980); Adickes v. Kress & Co., 398 U.S. 144, 152 (1970). However, to establish a prima facie case of conspiracy to violate rights protected under Section 1983, a plaintiff must demonstrate that the defendants 'reached an understanding' to deny the plaintiff his or her rights [and] prove an actionable wrong to support the conspiracy."' Bailey v. Board of County Commissioners, 956 F.2d 1112, 1122 (11 Cir.) (quoting Bendiburg v. Dempsey, 909 F.2d 463, 468 (11 Cir.), cert. denied, 500 U.S. 932 (1991)), cert. denied, 506 U.S. 832 (1992). Further, a complaint raising only conclusory, vague, general allegations of conspiracy may be dismissed.   Fullman v. Graddick, 739 F.2d 553, 556-57 (11 Cir. 1984)("In conspiracy cases, a defendant must be

informed of the nature of the conspiracy which is alleged. It is not enough to simply aver in the complaint that a conspiracy existed.").

The plaintiff has failed to state a claim for relief with regard to his allegation of a conspiracy among the defendants, because he fails to sufficiently allege the existence of an agreement or mutual understanding among these individuals, and because his complaint is only conclusory and unsupported by specific factual allegations to show the existence of any conspiracy. It is therefore recommended that the claim alleging unconstitutional conspiracy be denied.

### 2. Allegations Concerning Violation of Right to Privacy

The plaintiff alleges that West violated his right to privacy by disclosing that he had AIDS to other inmates and making comments about the size of his pills. The plaintiff further alleges that Denmeade violating his right to privacy by disclosing to West that he had AIDS.[1]

It is well established that inmates do not forfeit all constitutional protections by reason of their confinement. See Bell v. Wolfish, 441 U.S. 520 (1979); see also Turner v. Safley, 482 U.S. 78 (1987). The Eleventh Circuit has recognized that prisoners retain certain fundamental rights of privacy, a right implicitly included within the Fourteenth Amendment, even though the precise nature and scope of the privacy right is far from settled and is approached on a case-by-case basis. See generally Harris v. Thigpen, 941 F.2d 1495 (11 Cir. 1991).

It is beyond dispute that prison administrators have broad discretion to implement policies and practices designed to preserve order, security, and discipline in the prisons, and to ensure the

---

[1] The plaintiff also alleges that West committed state law torts, such as defamation, against him. The possible pendent state law claims will not be addressed in this Report. The Court will consider these claims at a later stage in these proceedings as the record is developed as to the constitutional claim of the denial of the right to privacy.

8

safety of the inmates and staff within a facility. Bell v. Wolfish, 441 U.S. 520 (1979). The courts therefore give wide deference to prison administrators in the day-to-day operations of a prison facility. Bell v. Wolfish, supra. Central to all other goals is internal security within the prison. See Pell v. Procunier, 417 U.S. 817, 823 (1974). Thus, when prison security is at stake, prison officials must generally be accorded wide latitude. Id. at 826.

The constitutionally recognized right of privacy protects against the unauthorized disclosure of personal matters, including personal medical information or personal medical records. See Whalen v. Roe, 429 U.S. 589, 599-600 (1977) (finding that the right to privacy encompasses two distinct areas: avoiding disclosure of personal matters, and independence in making important decisions); Doe v. City of New York, 15 F.3d 264, 267 (2 Cir. 1994) (recognizing the right to be free from unauthorized disclosure of medical records); Schaill ex rel. Kross v. Tippecanoe Co. Sch. Corp., 864 F.2d 1309, 1322 n. 19 (7 Cir. 1988) (recognizing, in a case involving a random urine testing program for athletes and cheerleaders, that the students had a substantial privacy interest in the confidentiality of medical information, but refusing to invalidate the program in the absence of any indication that confidential medical information would be widely disseminated, where the need for disclosure arose only in the event of a positive urine test, and positive results would be disclosed only to the athletic director); Anderson v. Romero, No. 92 C 5950, 1994 WL 9645, at *1, (N.D.Ill. Jan 12, 1994) (recognizing, in the prison context, that there is a general privacy interest in the confidentiality of inmates' medical information, and holding that where it appeared from the record that a "good deal of the alleged disclosure in the case was casual" and possibly "outside the range of official activities to which qualified immunity attaches," the defendants' motion to dismiss should be denied as to the disclosure claim relating to the plaintiff's HIV status).

While inmates enjoy a right to privacy of their medical information, the Courts have recognized, in the prison context, that the constitutional right to privacy is not absolute, including in cases involving questions of medical privacy. See Harris v. Thigpen, supra, 941 F.2d at 1513-15 (recognizing that while prisoners retain fundamental rights of privacy, and may have a

significant right of privacy in preventing involuntary disclosure of their diagnoses to other inmates, Id. at 1513, that the prisoners' rights are subject to restrictions in order for correctional officers to maintain security and advance penological goals, Id. at 1514, and that therefore a prison regulation or policy that impinges on a prisoner's constitutional rights is valid if it is reasonably related to legitimate penological interests, Id. at 1515); Vergara v. Vogliano, No. 95 Civ. 4513 (JFK), 1997 WL 86388, at *2-3, (S.D.N.Y. Feb. 28, 1997) (granting motion to dismiss in a case in which corrections officers who were present in the examination room with the doctor and inmate/patient were there for legitimate security reasons, where the doctor opened the plaintiff's medical file leaving it open on the desk so that it was possible for one officer to glance at the record, and the doctor stated, loud enough for that one officer to hear, that the plaintiff had penile warts (a sexually transmitted disease), and the doctor then without closing a privacy curtain instructed the plaintiff to approach so that he (the doctor) could apply an ointment to the inmate/patient).

The gravamen of the complaint against the defendant West is the plaintiff's claim that the his right to privacy was compromised when West commented on the size of his pills and disclosed to other inmates that he had AIDS. It is apparent, taking the allegations as true, and construing the pro se pleading in the light most favorable to the plaintiff, that his allegations are sufficient under the liberal pleading standard of Haines and Conley, supra, to state a claim for deprivation of his right to privacy, see Whalen v. Roe, Harris v. Thigpen, Doe v. City of New York, Schaill ex rel. Kross v. Tippecanoe Co. Sch. Corp., and Anderson v. Romero, supra, against the defendant West.

The plaintiff, however, has not raised a cognizable claim of the denial of the right to privacy against Denmeade. The alleged privacy violation allegedly occurred when Denmeade allowed West to see that the plaintiff was taking medication for AIDS and, liberally construed, may have actually told West that the plaintiff had AIDS. The plaintiff concedes that West was assigned to accompany Denmeade as she was distributing medication, for Denmeade's security. Thus, West was entitled, for security purposes, to observe the medication being given to inmates. The fact that West may have commented on the size of the plaintiff's pills, or may have disclosed to other inmates that he had AIDS does not implicate Denmeade in the violation of his right to

10

privacy. Denmeade did not disclose the plaintiff's personal health information to other inmates and, even if she advised West that he had AIDS, such was necessary as a security measure and not a constitutional violation.

Thus, the allegation against West is sufficient to state a claim in a civil rights complaint under §1983, for violation of privacy, but the plaintiff has failed to state a cognizable claim against Denmeade. It is recommended that the claim of denial of the constitutional right to privacy in the Amended Complaint against West proceed, but that the claim against Denmeade be dismissed pursuant to 28 U.S.C. §1915(e)(2)(b)(ii), for failure to state a claim upon which relief can be granted.

As West has failed to return a waiver of service to the Court, the Court will issue a separate Order directing service of the Amended Complaint by United States Marshal.

        3.     Claims Concerning Misuse of Grievance Procedure

The plaintiff claims that the following defendants violated the BCJ's administrative grievance procedures: West (giving the plaintiff the wrong form, responding untruthfully to a grievance and lying to investigators); Denmeade (lying to investigators); Carson (failing to submit grievance); Scott (telling the plaintiff to drop his complaint against Denmeade and failing to investigate his grievances); Palmer (and failing to investigate his grievances); Owens (returning grievance and intercepting a grievance); Unknown defendants (failing to timely respond to grievances and ignoring grievances); Smith (failing to respond to a grievance); Lam (failing to investigate); Evans (failing to investigate); Captain Neilly and his secretary (failing to telephone the plaintiff's wife).

The Constitution does not entitle prisoners and pretrial detainees in state or federal facilities to grievance procedures, Adams v. Rice, 40 F.3d 72, 75 (4 Cir. 1994), cert. denied 514 U.S. 1022 (1995); Buckley v. Barlow, 997 F.2d 494, 495 (8 Cir. 1993); Flick v. Alba, 932 F.2d 728,

729 (8 Cir. 1991); Stewart v. Block, 938 F.Supp. 582, 588 (C.D. Cal. 1996); Brown v. Dodson, 863 F.Supp. 284, 285 (W.D. Va. 1994); and since even if a grievance mechanism has been created for the use of states inmates the mechanism involves a procedural right, not a substantive one, and it does not give rise to a liberty interest protected by the Due Process Clause, Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7 Cir. 1996); Hoover v. Watson, 886 F.Supp. 410, 418 (D. Del. 1995); Brown v. Dodson, supra at 285; and thus, if the state elects to provide a grievance mechanism, violations of its procedures, or even a failure to respond to the prison grievance, do not give rise to a §1983 claim, Buckley v. Barlow, supra, 997 F.2d at 495; Hoover v. Watson, supra, 886 F.Supp. at 418-19. When the claim underlying the administrative grievance involves a constitutional right, the prisoner's right to petition the government for redress is the right of access to the courts, which is not compromised by the prison's refusal to entertain his grievance. Flick v. Alba, supra, 932 F.2d at 729.

It is therefore recommended that all of the plaintiff's claims concerning misuse of the BCJ grievance procedure, including failure to investigate, be dismissed pursuant to 28 U.S.C. §1915(e)(2)(B)(ii) for failure to state a claim upon which relief can be granted.

4. Supervisor Liability and Failure to Train

The plaintiff alleges that Sheriff Jenne is liable for the constitutional violations of his subordinates and he and Evans have failed to properly train their subordinates about AIDS.

The plaintiff raises no specific allegations of wrongdoing against Sheriff Jenne or Evans with regard to the violation of his constitutional rights other than failure to train. It appears that he seeks to include them as defendants in this action because they holds supervisory positions. This he cannot do. Public officials in supervisory positions cannot simply be held vicariously liable for the acts of their subordinates. Robertson v. Sichel, 127 U.S. 507 (1888); Byrd v. Clark, 783 F.2d 1002, 1008 (11 Cir. 1986). Nor can liability be predicated solely upon the

doctrine of respondeat superior in a §1983 action. Monell v. Department of Social Services, 436 U.S. 658 (1978); Vineyard v. County of Murray, Georgia, 990 F.2d 1207 (11 Cir. 1993).

Under appropriate circumstances the failure to adequately train or supervise may give rise to a claim cognizable under §1983, see City of Canton, Ohio v. Harris, 489 U.S. 378 (1989). Mere conclusory allegations of failure to train, however, are not enough; and the courts have generally held that there is no affirmative constitutional duty on the part of a supervising public official to train, supervise, or discipline subordinates so as to prevent constitutional torts, except where the supervisor has contemporaneous knowledge of an offending incident or knowledge of a prior pattern of similar incidents, and circumstances under which the supervisor's inaction could be found to have communicated a message of approval to the offending subordinate. See Chinchello v. Fenton, 805 F.2d 126, 133-34 (3 Cir. 1986). The Eleventh Circuit has held that nothing less than a showing of gross negligence is required to establish liability for inadequate training. Cannon v. Taylor, 782 F.2d 947, 951 (11 Cir. 1986).

Moreover, the courts have required that the plaintiff must "identify a deficiency in a training program closely related to the injury complained of and must further show that the injury would have been avoided 'under a program that was not deficient in the identified respect.'" Gordon v. Kidd, 971 F.2d 1087, 1097 (4 Cir. 1992) (quoting City of Canton, supra, 489 U.S. at 391). Finally, in order to recover on a claim of failure to train, the plaintiff must show 1) that the [supervisor] failed to train, 2) that a causal connection existed between the failure to supervise or train and the violation of the plaintiff's rights, and 3) that such failure to supervise or train amounted to gross negligence or deliberate indifference. Hinshaw v. Doffer, 785 F.2d 1260, 1263 (5 Cir. 1986).

The plaintiff has not satisfied these requirements because he raises only unsupported and conclusory allegations of failure to supervise and failure to train, which is insufficient to state a constitutional claim. The plaintiff does not allege facts that tend to show that there was any gross

negligence or deliberate indifference on the part of Jenne or Evans that resulted in any deprivation of constitutional rights.

It is therefore recommended that the defendants Jenne and Evans be dismissed as parties to this action pursuant to 28 U.S.C. §1915(e)(2)(b)(ii), for failure to state a claim upon which relief can be granted.

5.  Claims Against Nurse Jane Doe

The plaintiff alleges generally that Nurse Jane Doe told the plaintiff he wasn't guaranteed to win this lawsuit, told him to drop it, and asked him if his wife had AIDS. Liberally construed, the plaintiff raises no facts to suggest that Doe violated any of his constitutional rights. It is therefore recommended that the defendant Doe be dismissed as a party to this action pursuant to 28 U.S.C. §1915(e)(2)(b)(ii), for failure to state a claim upon which relief can be granted.

6.  Defendant United States

The plaintiff alleges that the United States is liable because as a federal prisoner he has been defamed, libeled, slandered and deprived of his right to privacy. The United States of America is not a proper party in a civil rights action. Only individuals can be sued in federal civil rights actions. The Constitution does not waive the Government's sovereign immunity in a suit for damages. McCollum v. Bolger, 794 F.2d 602, 608 (11th Cir. 1986), cert. denied sub nom. McCollum v. Tisch, 479 U.S. 1034 (1987). Therefore, the United States is not a proper party and must be dismissed.

E.  Motion to Add Wife as Co-Plaintiff [DE# 22]

Under Federal Rule of Civil Procedure 20(a), "All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or

arising out of the same transaction, occurrence, or series of transactions or occurrences and if any questions of law or fact common to all these persons will arise in the action." Fed.R.Civ.P. 20(a).

The plaintiff's wife, Tameka Gaines Burgess, has filed a Motion to be Added as a Co-Plaintiff. [DE# 22]. The plaintiff attempted to have his wife be a co-plaintiff in the original Complaint, but because she did not sign the Complaint, the Court treated the Complaint as an individual Complaint. Similarly, the plaintiff appears to try to include his wife as a co-plaintiff in the Amended Complaint, but again has signed the Amended Complaint individually. The plaintiff's wife has no standing to file a motion in this case, but the Court will construe her motion as an attempt to verify the Amended Complaint, which is understandable because the plaintiff is incarcerated.

Ms. Burgess should not be added as a co-plaintiff in this case, as she has raised no factual allegations to show that any defendant violated any of her constitutional rights or any rights under state law. The Amended Complaint makes the following references to Ms. Burgess. The plaintiff states generally at the outset and at the end of the pleading that the defendants "cause libel defamation embarrassment, injury to Plaintiff and Plaintiff's wife reputation and emotions [sic]." [DE# 21 at 2; 9 at ¶32]. He further states that Palmer had communicated with his wife and had arranged some unspecified legal action, but then Palmer did not speak to his wife again. [Id. at 5 ¶14]. The plaintiff states that he and his wife "is trying desparately to reach out for help [sic]," and "Plaintiff wrote grievances while my wife is trying to make contact from the outside." [Id. at 5-6 ¶¶15, 17]. The plaintiff states that Smith told the plaintiff that he had spoken with his wife, who allegedly lied to her, telling her he was not acquainted with Palmer. [Id. at 6 ¶19]. The plaintiff claims that Denmeade has violated his and his wife's right to privacy and has attempted to cover up her malicious and wrongful acts against them. [Id. at 8 ¶25]. Finally, the plaintiff states that his wife has had difficulty contacting Evans, Neilly and Neilly's secretary, despite their indications that they would call her.

As discussed above, the plaintiff cannot state a constitutional claim regarding the misuse of the grievance procedure or failure to investigate. Ms. Burgess cannot claim a violation of her constitutional rights based on allegations that BCJ staff have failed to contact her or have ignored her phone calls. Further, the Amended Complaint is insufficient to raise a constitutional claim of the denial of the right to privacy as to Ms. Burgess. The only specific allegation in this regard is a complaint against Denmeade, who did not commit any constitutional violations. Ms. Burgess cannot claim that West or any other BCJ official violated her right to privacy. Further, the Court finds that the Amended Complaint raises no factual allegations whatsoever to support any pendent state law libel or other state law claims as to Ms. Burgess.

Based on the foregoing, it is recommended that the Motion to Add Ms. Burgess as a Co-Plaintiff [DE# 22] be denied.

### III. Conclusion

It is therefore recommended that:

1. The plaintiff's Motion to Amend [DE# 20] be granted.

2. The Amended Complaint [DE# 21] be the Operative Complaint.

3. The Amended Complaint proceed only as to the allegations against West.

4. The remaining claims and defendants be dismissed pursuant to 28 U.S.C. §1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted.

5. The Motion to Add Co-Plaintiff [DE# 22] be denied.

Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the report.

It is so recommended at Miami, Florida, this 7 day of August, 2006.

_____
UNITED STATES MAGISTRATE JUDGE

cc:   Earl Hughes Burgess, Pro Se
      No. 53598-004
      FCI Jesup
      2680 Highway 301 South
      Jesup, GA 31599

      Tameka Gaines Burgess, Pro Se
      766 Veneto Drive #106
      Lake Park, FL 33403

17